# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DARNELL W. MOON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )      **Case No. 3:15-cv-00861-MJR** |
| | ) |
| **CHARLES SAMUELS, JR.,** | ) |
| **D. SCOTT DODRILL,** | ) |
| **BRIAN K. DAVIS,** | ) |
| **AMBER NELSON,** | ) |
| **PAUL M. LAIRD,** | ) |
| **J.S. WALTON,** | ) |
| **WENDY J. ROAL,** | ) |
| **R. ROLOFF,** | ) |
| **HENRY RIVAS,** | ) |
| **M. NEUMANN,** | ) |
| **G. BURGESS,** | ) |
| **DAN SPROUL,** | ) |
| **CALVIN JOHNSON,** | ) |
| **JOHN BAIR,** | ) |
| **D. SCHIAVONE,** | ) |
| **LESLIE SMITH,** | ) |
| **APRIL CRUITT,** | ) |
| **WILLIAM FALLS,** | ) |
| **J. SIMMONS,** | ) |
| **T. CAPALDO,** | ) |
| **STEPHEN COLT,** | ) |
| **LT. LOCKRIDGE,** | ) |
| **K. WELLS,** | ) |
| **LT. MALCOLM,** | ) |
| **LT. F. VANDYVER,** | ) |
| **B. TOLSON,** | ) |
| **J. MARSH,** | ) |
| **LT. SIMS,** | ) |
| **MERCER PATTERSON,** | ) |
| **M. DELOIA,** | ) |
| **L. FONES,** | ) |
| **F. DOUGHERTY,** | ) |
| **A. WILL,** | ) |
| **J. HAMPTON,** | ) |
| **F. FALIMER,** | ) |
| **M. EMORY,** | ) |
| **T. SMITH,** | ) |

| | |
|---|---|
| **D. LENON,** | ) |
| **H. CLARK,** | ) |
| **J. MASSEY,** | ) |
| **C/O COOK,** | ) |
| **C. HILLIARD,** | ) |
| **C/O GRANT,** | ) |
| **C/O BUSH,** | ) |
| **C/O SOMERS, and** | ) |
| **THOMAS R. KANE,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Darnell Moon currently resides in Cape Girardeau, Missouri, but was previously incarcerated at the United States Penitentiary at Marion, Illinois. (Doc. 1 at 12.) Proceeding *pro se*, Moon has filed a *Bivens* action pursuant to 42 U.S.C. § 1331, alleging that his free exercise, establishment, and equal protection rights were violated when he was banned from engaging in group prayer with other Muslims during his tenure at Marion. (*Id.* at 14-15.) Moon seeks declaratory relief, compensatory damages, and punitive damages. (*Id.* at 15-16.)

This matter is now before the Court for a preliminary review of Moon's complaint pursuant to 28 U.S.C. § 1915. Under § 1915, district courts must dismiss a case at any time if the case is frivolous or malicious, if the complaint fails to state a claim on which relief may be granted, or if the plaintiff seeks monetary relief against a defendant who is immune.

## Background

Moon was confined at the United States Penitentiary at Marion, Illinois from January 2012 to December 2013. (Doc. 1 at 12.) Six months after his arrival at Marion, Moon became a Muslim, and from that point on he says that various corrections officers at Marion refused to allow him to engage in "congregational prayer" with other Muslims at the prison. (*Id.* at 12-13.)

The ban on group prayer was an edict from above – in this case, from supervisory prison officials at Marion and beyond who banned prisoners from praying together and specifically barred Muslims from engaging in group prayer while allowing those of other faiths to engage in the practice despite the ban.  (*Id.* at 14-15.)  Some Muslim prisoners received incident reports from officers for engaging in communal prayer.  (*Id.* at 13-14.)  Moon was spared from write-ups, but he was told by Rivas, Neumann, Cardona, Burgess, Garcia, and "all of the correctional officers and Lieutenants" named as defendants in this case that he would be "placed into the [special housing unit] if he was caught" engaging in group prayer with others of the Muslim faith.  (*Id.* at 13.)  When Moon inquired further about the ban, he was told that those of Muslim faith "are banned from praying together because you might be 'radicalizing' other inmates in the cell, or teaching non-Muslims about your religion in your cell, and we can't tolerate that."  (*Id.* at 14.)

Sometime after December 2013, Moon was released from federal prison, and he says he is no longer in federal custody.  (*Id.* at 7.)  On August 5, 2015, he filed a complaint in this Court.

## Discussion

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break the claims in Moon's *pro se* complaint into numbered counts, as shown below.  The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court.  The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:**    All of the defendants violated Moon's Free Exercise Clause rights, as the supervisory defendants created a policy barring prisoners from engaging in group prayer, and the corrections officers enforced that policy by ordering Moon not to engage in group prayer with other Muslims.

**COUNT 2:**     All of the defendants violated Moon's Establishment Clause and Equal Protection rights, as the supervisory defendants banned Muslims from engaging in group prayer while allowing inmates of other faiths to engage in group prayer, and officers at Marion enforced that policy.

**COUNT 3:**     All of the prison officials named in this case intentionally inflicted severe emotional distress on Moon under Illinois state law.

Moon's complaint focuses on the free exercise of his religion, so the Court will start there (**Count 1**).  "[A] prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir 1990).  To state a claim under the Free Exercise Clause of the First Amendment, a plaintiff must allege facts to suggest that his "right to practice [his chosen religion] was burdened in a significant way." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005).  Here, Moon says group prayer is central to his faith; that Samuels, Kane, Dodrill, Davis, Leslie Smith, Nelson, Laird, Roloff, Bair, Schiavone, Cruitt, Capaldo, Simmons, and Falls created a policy prohibiting group prayer; and that Rivas, Neumann, Burgess, and the other defendant officers told Moon that he would be moved to the special housing unit at Marion if he engaged in group prayer during his tenure as a Muslim at Marion from July 2012 to December 2013.  While it is a close case given that Moon offers little detail about the dates as to when these incidents occurred, his allegations are sufficient to raise arguable free exercise claims for the purposes of screening review, so **Count 1** may proceed as to Samuels, Kane, Dodrill, Davis, Leslie Smith, Nelson, Laird, Roloff, Bair, Schiavone, Cruitt, Capaldo, Simmons, Falls, Rivas, Neumann, Burgess, Lockridge, Wells, Malcolm, VanDyver, Tolson, Marsh, Sims, Patterson, Deloia, Fones, Dougherty, Will, Hampton, Falimer, Emery, Smith, Lenon, Clark, Massey, Cook, Hilliard, Grant, Bush, and Somers.

While Moon states just enough to put forth a claim as to these defendants, Count 1 must be set aside as to the other individuals named in Moon's complaint.  As to Cardona and Garcia,

Moon has not named those individuals as defendants in his caption or his list of defendants, so they are not parties to this action and should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir.2005) (defendant must be "specif[ied] in the caption"). As for Walton, Roal, Sproul, Johnson, and Colt, Moon provides no specifics as to what those parties did, beyond lumping them together as "defendants" and claiming that they enforced or created the ban as to many of the inmates placed in Marion's Communications Management Unit. That conclusory allegation is not enough to give these defendants the notice required by Federal Rule of Civil Procedure 8 – it does not lay out what each of those defendants did to Moon during his tenure at Marion. *See, e.g., Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (lumping of defendants without "any details about who did what" is "inadequate"); *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) ("formulaic recitations" that all defendants are liable "does not put the defendants on notice of what exactly they might have done").

Moon next alleges that various Marion prison officials discriminated against members of the Muslim faith by barring Muslims from engaging in group prayer while permitting those of other faiths to do so (**Count 2**). The "religious dimension" of this alleged discrimination "is governed by the religion clauses of the First Amendment, leaving for the equal protection clause only a claim of arbitrariness unrelated to the character of the activity allegedly discriminated against." *See Reed v. Faulkner*, 842 F.2d 960, 962, 964 (7th Cir. 1988) (separate equal protection violation could exist if officials treat one religion "differently from" another in a deliberate fashion and "for no reason at all"). The specific religion clause of the First Amendment implicated here is the Establishment Clause, which "prohibits the government from favoring one religion or another" – the state cannot "make it easier for adherents of one faith to

practice their religion than for adherents of another faith to practice *their* religion, unless there is a secular justification for the difference in treatment." *Kaufman*, 419 F.3d at 683-84.

Construing his complaint liberally, Moon has put forth facts that make out arguable Equal Protection and Establishment Clause claims. He first says that Samuels, Dodrill, Nelson, Kane, Davis, Laird, and Leslie Smith ordered that Muslims be banned from engaging in group prayer while at the same time allowing those of other faiths to engage in communal prayer, and that is enough to state arguable claims under both clauses. He also alleges that Roloff, Rivas, Neumann, Burgess, Lockridge, Wells, Malcolm, VanDyver, Tolson, Marsh, Sims, Patterson, Deloia, Fones, Dougherty, Will, Hampton, Falimer, Emery, Smith, Lenon, Clark, Massey, Cook, Hilliard, Grant, Bush, and Somers told him not to engage in group prayer, and in doing so enforced this purportedly discriminatory policy. That, too, is just enough to state Equal Protection and Establishment Clause claims against these parties. Accordingly, **Count 2** may proceed against these defendants. However, **Count 2** must be dismissed as to the other defendants: Cardona and Garcia are not named in the caption so they cannot be considered parties in this case, and the only allegation directed at the other defendants for this claim is a conclusory statement that all "defendants" enforced a ban at some point – a statement that does not give those defendants the kind of notice that they need to respond under Rule 8.

As his final claim, Moon says that all of the defendants are liable for intentional infliction of emotional distress under Illinois law (**Count 3**). Where a district court has original jurisdiction over a civil action, as is the case here, it also has supplemental jurisdiction over related state claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the federal claims. *Wisconsin v. Ho–Chunk Nation*, 512

F.3d 921, 936 (7th Cir. 2008).  Moon's emotional distress claim concerns the same facts as his §
1983 religious claims, so supplemental jurisdiction over this claim is appropriate.

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must
allege facts tending to show that the defendant intentionally or recklessly engaged in "extreme
and outrageous conduct" that resulted in severe distress.  *Sornberger v. City of Knoxville, Ill.*,
434 F.3d 1006, 1030 (7th Cir. 2006).  An intentional infliction of emotional distress claim has
three components: the conduct involved must be extreme and outrageous; the actor must either
intend that his conduct inflict severe emotional distress or know that there is a high probability
that his conduct will cause severe distress; and the conduct must in fact cause severe distress.
*McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).  To be actionable, the defendant's conduct
"must go beyond all bounds of decency and be considered intolerable in a civilized community."
*Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).  Liability for this kind of tort is reserved
for those acts that are "truly outrageous" – that is, an "unwarranted intrusion" that is "calculated
to cause severe emotional distress to a person of ordinary sensibilities."  *Id.*

Under these standards, Moon's barebones allegations are not sufficient to make out an
intentional infliction of emotional distress claim.  While Moon makes a sweeping allegation in
his complaint that all of the defendants "intended to cause him severe emotional distress," many
of the policies he complains of were put in place before he was a Muslim and subject to the ban
on group activity, swinging against any intent to harm Moon by many of the defendants.  More
importantly, Moon's allegations for this claim are generalized and conclusory:  he makes no
effort to distinguish the actions of policy-makers from those of line employees, he does not
describe his interactions with the defendants with any real detail, and he has not provided any
allegations in support of his conclusory statement that he suffered distress.  Given these defects,

his allegations do not offer the minimal "factual content" necessary to state a claim under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). So **Count 3** must be dismissed without prejudice.

<u>**Disposition**</u>

IT IS HEREBY ORDERED that **COUNT 1** shall **PROCEED** against **SAMUELS, KANE, DODRILL, DAVIS, LESLIE SMITH, NELSON, LAIRD, ROLOFF, BAIR, SCHIAVONE, CRUITT, CAPALDO, SIMMONS, FALLS, RIVAS, NEUMANN, BURGESS, LOCKRIDGE, WELLS, MALCOLM, VANDYVER, TOLSON, MARSH, SIMS, PATTERSON, DELOIA, FONES, DOUGHERTY, WILL, HAMPTON, FALIMER, EMERY, SMITH, LENON, CLARK, MASSEY, COOK, HILLIARD, GRANT, BUSH,** and **SOMERS**. **COUNT 1** is **DISMISSED without prejudice** as to all other defendants.

IT IS ORDERED that **COUNT 2** shall **PROCEED** against **SAMUELS, DODRILL, NELSON, KANE, DAVIS, LAIRD, LESLIE SMITH, ROLOFF, RIVAS, NEUMANN, BURGESS, LOCKRIDGE, WELLS, MALCOLM, VANDYVER, TOLSON, MARSH, SIMS, PATTERSON, DELOIA, FONES, DOUGHERTY, WILL, HAMPTON, FALIMER, EMERY, SMITH, LENON, CLARK, MASSEY, COOK, HILLIARD, GRANT, BUSH,** and **SOMERS**. **COUNT 2** is **DISMISSED without prejudice** as to all other defendants.

IT IS ORDERED that **COUNT 3** is **DISMISSED without prejudice**. Because there are no further claims against them, **WALTON, ROAL, SPROUL, JOHNSON,** and **COLT** are dismissed from this case.

IT IS FURTHER ORDERED that Plaintiff's Motion for Service of Process at Government Expense (Doc. 8) is **GRANTED**. Service will be ordered as indicated below.

IT IS FURTHER ORDERED that the Clerk of Court shall prepare for Defendants **SAMUELS, KANE, DODRILL, DAVIS, LESLIE SMITH, NELSON, LAIRD, ROLOFF,**

**BAIR**, **SCHIAVONE**, **CRUITT**, **CAPALDO**, **SIMMONS**, **FALLS**, **RIVAS**, **NEUMANN**, **BURGESS**, **LOCKRIDGE**, **WELLS**, **MALCOLM**, **VANDYVER**, **TOLSON**, **MARSH**, **SIMS**, **PATTERSON**, **DELOIA**, **FONES**, **DOUGHERTY**, **WILL**, **HAMPTON**, **FALIMER**, **EMERY**, **SMITH**, **LENON**, **CLARK**, **MASSEY**, **COOK**, **HILLIARD**, **GRANT**, **BUSH**, and **SOMERS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are ordered to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action.

**IT IS SO ORDERED.**

**DATED: September 2, 2015**

<u>**s/ MICHAEL J. REAGAN**</u>
**Chief Judge Michael J. Reagan**
**United States District Judge**